THE PEOPLE, ex rel. BELDEN, v. THE CONTRACTING BOARD.

Proposals for a contract, requiring as security the certificate of a bank that it holds a deposit of $4,000 "in cash," are satisfied by a certificate of the deposit of $4,000, without further specification.

The law requiring the canal contracting board to award contracts for repairs to "the lowest bidder who will give adequate security," and it having made an award, a lower bidder who has given the security required is not entitled to a mandamus.

Though the practice of issuing a peremptory mandamus in the first instance is not to be commended, it is within the power of the court; and the objection, that an alternative writ should have first issued, is not available on error.

THIS proceeding came up on appeal by the defendants from the order of the Supreme Court, at general term, in the third district, affirming an order of the special term, awarding a peremptory mandamus against the defendants, commanding them to forthwith proceed and award to the relator, and to enter into, a contract with him for the repairing and keeping in repair, in accordance with the rules and regulations of the contracting board, and with the terms of his proposal for such work, that portion of the canals of this state, and of the public works connected therewith, known as the Cayuga and Seneca canal.

The affidavits upon which the order for the mandamus was made showed that on the 27th of May, 1862, the defendants, composing the contracting board of the state, in pursuance of the provisions of chapter 105 of the Laws of 1857, advertised for proposals to be received until the 27th day of June, at 1½ o'clock, P. M., for furnishing all the materials, and performing all the work necessary to put and keep in good repair, during four and a half years from the 1st day of July then next, the Cayuga and Seneca canal.

Among the provisions of the notice, were the following:

"All proposals for the above described work, must be accompanied by a certificate of deposit in some banking insti-

tution in good credit, within this state, certifying that the sum of four thousand dollars in cash has been deposited in said institution, to the credit of N. S. Benton, auditor."

"No proposal will be considered, unless in strict conformity with this notice."

The notice required the proposals also to be accompanied by bonds for the performance of the work, with two or more sureties, which bonds were to be executed and authenticated, and the responsibility of the sureties attested, in a manner specially pointed out; and specifications and forms of the contract were mentioned as ready for examination at the place appointed for receiving the proposals.

On the 27th of June, and before the expiration of the time appointed for that purpose, the relator presented a proposal to do the work, which was accompanied by a certificate of deposit, in the following words and figures:

"$4,000.          *Certificate of Deposit.*

"STATE OF NEW YORK,
          "SALT SPRINGS BANK OF SYRACUSE,
                    "*Syracuse, June 27th,* 1862.

"A. C. Belden has deposited in this bank, four thousand dollars, payable to the order of N. S. Benton, auditor, on return of this certificate.          T. W. TRUESDELL, Teller."

In all respects, other than the form of the certificate, the proposal, and the papers which accompanied it, were in accordance with the terms of the notice. It was shown by the affidavits, both on the part of the plaintiffs and of the defendants, that the proposal of the relator was rejected on the ground that it did not appear, from the certificate of deposit produced by the relator, that the deposit was made in cash; and the contract was awarded to George M. Case, whose proposal for the work was the lowest which the board regarded as in accordance with the requirements of the printed notice, but not so low, by fifty dollars a year or more, as that of the relator.

From the affidavits on the part of the defendants, it appeared that the deposit made by the relator, was made in a check of

J. J. Belden for four thousand dollars, upon the same bank which issued the certificate of deposit; also, that on the 30th day of June, a contract was executed between the contracting board and Case, for said work and repairs to be done and performed by him. during four and a half years, from July 1st, 1862, of which contract duplicates were filed in the canal department, as required by law; that on the said 1st day of July, he commenced the work, pursuant to the contract, and was still in performance thereof.

No alternative mandamus was issued, but the defendants having appeared and filed affidavits in answer to the affidavits on the part of the plaintiffs, and both parties having been heard, a peremptory mandamus was ordered in the first instance, at the special term. From an affirmance of that order, the defendants brought the present appeal.

*F. Kernan*, for the appellants.

*L. Tremain*, for the respondents.

EMOTT, J. The Constitution of this State (article 7, § 3), as amended in 1854, declares that "all contracts for work or materials on any canal shall be made with the person who shall offer to do or provide the same at the lowest price, with adequate security for their performance." The act of 1857 (vol. 1, p. 214) provides that the contracting board "shall have power, and it shall be their duty to let by contract, under such regulations as said board shall prescribe, to the lowest bidder or bidders, who will give adequate security for the performance of the contract," the repairs of any completed section of the canal. Under this law, the contracting board advertised for proposals to keep the Cayuga and Seneca canal in repair for four years and a half. This notice indicated the form and character of the security, which the board would consider adequate, that is, it stated that every proposal must be accompanied by a certificate of deposit in some bank in good credit; that four thousand dollars in cash had been deposited therein to the credit of the auditor, which would be retained as

security for the performance of the contract. The relator made a proposal which was somewhat lower in price than that of any other person, but it was not accepted. A contract was made with one Case, who seems to have been the next highest bidder. The relator delivered with his proposal a certificate that he had deposited in the Salt Springs Bank of Syracuse four thousand dollars, payable to the order of N. S. Benton, auditor, but the certificate did not state in so many words that he had deposited such amount in cash. Case, whose bid was accepted, delivered a similar certificate, containing, however, the words "*in cash.*" It is to be inferred, although it is not distinctly stated that this difference in the form or phraseology of the certificate was the reason assigned for rejecting the relator's bid, and accepting a higher one. I confess I should be unable to justify such a decision, and I can hardly suppose that it was the true and only ground of the action of the board.

Yet I think the Supreme Court ought not to have compelled the board, by mandamus, to reverse their action, or to make a contract with the relator, after they had already made another contract with another person. The powers conferred upon the board necessarily involved and implied an exercise of discretion, although it seems exceedingly clear what decision their duty required them to make in this case. But they are to determine who is the lowest bidder, and what is adequate security; or if the amount and character of the security required is fixed by general regulation, then the contracting board are to decide whether the security offered in any given case conforms to the regulations. The principle is well settled, that whenever the act requires the exercise of discretion, this remedy will not lie. There must be a clear legal right not merely to a decision in respect to the thing sought, but to the thing itself. (*People, ex rel. Lynch,* v. *Mayor of New York,* 25 Wend., 680, 686; 19 Johns., 259; *Reeside* v. *Walker,* 11 How. U. S., 272.) The right in the case before us seems exceedingly plain, but it is after all only a right to a correct decision. The relator has no contract, no right

to any specific act free from all discretion in the contracting board. If we may interfere here, we may do so whenever the contracting board decides incorrectly as to the respective amounts of proposals, or the character of securities.

If the case were clearer to my mind than it is, in favor of the jurisdiction to grant a mandamus, I should still feel bound to withhold it, and that, although the relator should have no other remedy, which I, by no means, admit. The writ of mandamus is to some extent, at least, in the discretion of the court to grant or refuse; especially where, as in this case, no property of the relator has been taken or affected, and his claims rests altogether upon the interests of the State to have its work done by the lowest bidder, and not upon a legal right on his part. (*People* v. *Canal Board*, 13 Barb., 450, and cases cited.) The only legal right of the relator in such a case, if he could have any, would be to damages for refusing him the contract. But it appears in this case that the contracting board have made a contract with another person, one Case, already mentioned, and that he is engaged in the work. This individual would certainly be entitled to compensation for his work; and the only result of ordering a second contract for the same work, would be to subject the State to the payment of double compensation. I should not be inclined to issue a writ which would produce such a result, simply to correct a decision of these officers, even though flagrantly improper. There must, after all, be some discretion left to public officers, and a power to do wrong as well as right. The courts cannot correct all the evils incident to the administration of government under an elective system, especially where the judiciary itself is elective.

The judgment of the Supreme Court should be reversed, and judgment ordered for the defendants.

DENIO, Ch. J., DAVIES, WRIGHT, BALCOM and MARVIN, Js., were also for reversal—DENIO, Ch. J., and BALCOM, J., on the ground, among others, that the board, having executed a contract, could not execute another unless the first were abso-

The People *v.* The Contracting Board.

lutely void; and they thought it good for the purpose of giving the relator his action against the members of the board.

SELDEN, J., (dissenting.) The objections made by the appellants' counsel to the order appealed from, are all embraced in the following propositions: 1. That the certificate of deposit furnished by the relator was not such as the notice issued by the contracting board required. 2. That the question whether the certificate was in compliance with the notice was a judicial question which the board was required to decide; and, if its decision was erroneous, the error could not be corrected by mandamus. 3. That the contract with Case, who had no notice of the rights of the relator, was valid, and, as he is not a party to these proceedings, will remain valid notwithstanding the judgment; and that, under such circumstances, the power of the court should not be used to compel the execution of another contract for the same work. 4. That, if a mandamus was proper, there should have been an alternative writ, and not a peremptory writ in the first instance.

I think neither of these objections furnishes ground for reversing the judgment of the Supreme Court. Unless substance is to be disregarded, and importance attached to mere phraseology, the certificate of deposit furnished by the relator was in perfect accordance with the terms of the notice. The addition of the words, "in cash," to the expression, "has deposited four thousand dollars," would add nothing to the legal effect of the certificate. The obligation of the bank would be the same, with those words or without them. · In neither case could it discharge that obligation without paying to the holder of it four thousand dollars in cash. Neither is it material that the deposit was in fact made in a check, and not in cash. It is, doubtless, to be presumed that the check was drawn against a cash deposit to the credit of the drawer already in the bank; in which case, the check constituted a cash deposit. It is, however, unimportant whether that was so or not. The notice contemplated only a general deposit of cash to the credit of the auditor; and, in such a transaction,

the cash deposited becomes the property of the bank, and all the right which is acquired by the person to whose use the deposit is made, is a credit against the bank to the amount of the deposit. (*Chapman* v. *White*, 2 Seld., 412.) It was, therefore, wholly immaterial whether the deposit was made in cash or credit, provided it was sufficient to constitute a consideration for the certificate, and, perhaps, even that was immaterial. (16 N. Y., 125.) If the notice had required a special deposit of cash to the credit of the auditor, so that the right of property in the article deposited would have vested in him, and the obligation of the bank have been merely that of bailee, the case would have been different, and would probably have required a different determination.

There was nothing of a judicial character in the action of the board in reference to the certificate of deposit. There are many questions requiring the decision of ministerial officers, which involve, to some extent, the exercise of legal discrimination in their solution, but which are not regarded as judicial questions, and consequently the decision of them is not conclusive in collateral proceedings. A sheriff is required, when process is placed in his hands for service, to decide whether it is in conformity with law; but it was never claimed that his decision was a judicial one, or that it concluded any party affected by the process; and yet such a case presents quite as much the character of a judicial proceeding, as that involved in the present inquiry. It is a general, if not universal rule, that judicial proceedings cannot regularly be had (beyond their mere initiation), without notice to those to be affected by them, and giving them an opportunity to be heard. The necessity of such notice is probably the true test, by which to determine whether a proceeding is a judicial one or not. There is no evidence that such notice was given in the present case, and I am satisfied that none was necessary.

The remaining question is, whether a mandamus was the proper remedy under the circumstances disclosed by the affidavits. The statute made it the duty of the contracting board to let the work "to the lowest bidder" (1857, ch. 105, § 1),

and the relator was the lowest bidder. The absolute duty in this respect, which the statute imposed upon the contracting board, distinguishes this case from that of *The People* v. *The Canal Board* (13 Barb., 432), where it was held that the Canal Board could not be compelled by mandamus to enter into a contract on behalf of the State. There was nothing in the statute under which the claim was made in that case, requiring the work to be let to the lowest bidder. The language of the act was, "contracts shall be awarded to such parties as shall propose to perform the work on terms most safe and advantageous to the State, having due regard to price, the ability of the parties, and security offered for the performance thereof." (Laws of 1851, ch. 485, § 12.) I do not see that the contracting board was authorized to exercise any discretion on the subject, in the present case, unless, perhaps, to reject all the bids and refuse to let the work at all. If, however, any bid was accepted, the board had authority to accept none but the lowest. The relator was, therefore, entitled to the contract; and if it cannot be secured to him by mandamus, he is without remedy, or, at least, without adequate remedy. A partial remedy, if any such exists, furnishes no ground for refusing the writ. (1 Barb., 34; 24 N. Y., 120.) The case is thus brought within the rule, stated by DENIO, J., in *The People* v. *Mead* (24 N. Y., 119), that the writ of mandamus is a proper remedy "to compel executive and ministerial officers to perform official duties, where an individual has a private and pecuniary interest in such performance," and has no complete remedy by action. In the present case the rights of the public, as well as of the relator, are involved, as the State is interested in having the provisions of the act, directing the letting of work to the lowest bidder, observed.

It is urged, on the part of the defendants, that there is already a valid contract with Case, for the performance of this work, and that the court, for that reason, should not compel by mandamus the execution of another contract for the same work. Whether the contract with Case is valid or not, is a

question that cannot now be decided, as he is not a party to these proceedings, and has no opportunity to be heard. Assuming that it is, or may be, valid, it is obvious that inconvenience, and, to some extent, confusion, may result from a compliance with the mandamus, but it is not perceived how the probability of such inconvenience or confusion can affect the strict rights of the relator. It has been decided that, where an office is filled by a person, by color of right, a mandamus will not be issued to oust him and admit another; and cases of this kind are referred to as authorities for holding that the writ should have been denied in this case. (3 Johns. Cases, 79; 2 id., 217–247, Shephard's edition; 20 Barb., 302; 6 East, 356.) The reason on which those decisions rest is, that the proper remedy was by *quo warranto*, which shows that they are not applicable to the present case, in which no *quo warranto* would lie.

If the application for the mandamus was one of strict right, I can discover no ground upon which it could have been refused. The granting of the writ, however, is, to some extent, a matter of discretion (1 Cow., 502; 15 Barb., 608; 4 Hill, 582); and the peculiar circumstances of the case were proper for the consideration of the court below, in deciding whether it should be issued or not. But this court has often decided that it has no jurisdiction to control the exercise of discretion in the courts below, and the present case forms no exception to the rule.

It has been also insisted, that if a mandamus was proper, an alternative writ should have been first issued. It is within the power of the court to make the writ peremptory in the first instance; and where the parties have been heard, and there is no controversy in regard to facts, I can see no objection to that course, although the practice, except in very clear or very urgent cases, is hardly to be commended. (Topping on Mandamus, 407; Crary's Prac., 286; *Regina* v. *Fox*, 2 Ad. & Ellis N. S., 246; *Ex parte Goodell*, 14 Johns., 325; *The People* v. *The Judges of Cayuga*, 2 Johns. Cases, 68; *The People* v

*Throop*, 12 Wend., 183 ; *Ex parte Rogers*, 7 Cow., 526.). The judgment of the Supreme Court should be affirmed.

> Judgment reversed, and judgment for defendants.