THE PEOPLE, *ex rel.* James Vickerman, *vs.* THE CONTRACT-ING BOARD.

In November, 1859, the contracting board caused notice to be published, advertising for sealed proposals for keeping in repair certain portions of the Erie canal, for three years. The notice required that "all proposals must be accompanied by a certificate of deposit in some banking institution, &c. certifying that the sums of money above specified have been deposited in said institution to the credit of the auditor of the canal department." The relator sent in sealed proposals for section No. 5, which were the lowest made. They were accompanied by a certificate of deposit certifying that the relator had deposited in the M. V. Bank, (the requisite sum,) to the credit of himself; which certificate was indorsed by said relator as follows: "Pay N. S. B., auditor, &c. or order." The board rejected the relator's bid, although the lowest, and refused to award the contract to him, on the ground that a certificate of deposit to his own credit, and indorsed by him to the auditor, or his order, did not comply with the terms of the notice. *Held* that the relator, being the lowest bidder, and having furnished the requisite security for performance, was clearly entitled to the contract, and that the contracting board, in rejecting his bid and awarding the contract to another, acted without authority.

The certificate of deposit conformed, in substance, if not absolutely in form, to the requirements of the notice, and gave to the contracting board the whole benefit of the deposit, equally as if it had been in every respect formal. And such being the case, there was no *discretion* left in the board to award to the relator the contract. He was entitled to it, as matter of right and of law. *Per* HOGEBOOM, J.

The People *v.* Contracting Board.

And it was *held,* that under these circumstances, the right of the relator to a mandamus was perfectly clear, unless there was something in the facts presented which showed some combination, or that the proposals made were excessive, or disadvantageous to the state.

If, in such a case, it is found by the judge who tries the cause that the relator's bid was rejected on account of the form of the certificate, the court will assume that there was no other reason for the refusal to give the contract to the relator; and hence a mandamus is the proper remedy for enforcing his rights.

That remedy will not be defeated by the objection that the state is the defendant, and that a party can not sue the state; the state not being the defendant, in such a case, but certain ministerial officers who are bound to perform their duties.

The question whether the defendants still have it in their power to award the contract to the relator does not arise, upon an appeal from an order of the special term awarding a peremptory mandamus. That question should be presented for the consideration of the court upon the original application for the writ.

The remedy by mandamus in such a case will not be defeated by the fact that the time for the performance of the contract has expired, if it had not expired when the mandamus was ordered.

A party should never be defeated of his remedy, by the delay which the adverse party has occasioned.

THIS was a mandamus issued on the relation of the relator, James Vickerman, to compel the defendant to award to him the contract for the repair of a portion of the Erie canal, known as section No. 5. The cause was tried before Judge PECKHAM, without a jury, and a judgment entered awarding a peremptory mandamus.

The facts were, as appear by the findings of the judge, that on the 28th day of November, 1859, the contracting board, consisting of the canal commissioners, state engineer and surveyor, and the auditor of the canal department, caused a notice to be published advertising for sealed proposals for keeping in repair certain portions of the Erie canal, for three years. That the relator sent in sealed proposals, which were the lowest. That it was required by the said notice that "all proposals must be accompanied by a certificate of deposit in some banking institution in good credit, within this state, certifying that the sums of money above specified, have

been deposited in said institution to the credit of the auditor of the canal department." That the proposals of the said relator for section No. 5 were accompanied by a certificate of deposit certifying that the relator had deposited in the Mohawk Valley Bank, (the requisite sum,) to the credit of himself, which certificate was indorsed by said relator as follows : "Pay N. S. Benton, auditor, &c. or order." That the said bank was in good credit in this state, and N. S. Benton was then auditor of the canal department. The sole ground of the rejection of the relator's bid, although the lowest, was the pretense that a certificate of deposit to his own credit, and indorsed by him to the auditor or his order, did not comply with the terms of said notice requiring all proposals to be accompanied by a certificate of deposit "to the credit of the auditor of the canal department," and that on that ground the defendants refused to award the contract for such repairs to the relator.

The defendants appealed from the judgment entered upon the decision of the judge at the circuit.

*H. Smith,* for the appellant.

*S. Hand,* for the respondent.

MILLER, J. I think that there can be no doubt that the defendants, in rejecting the relator's bid, acted without authority. The relator was the lowest bidder, furnished the requisite security for the performance of the contract, and was clearly entitled to it. (*Const. art.* 7, § 3. *Laws of* 1857, *vol.* 1, *p.* 214.) The rejection of the proposal on the ground that the certificate did not comply with the terms of the notice, in being payable to the order of the relator himself and not to the auditor of the canal department, after it had been indorsed by the relator, was entirely unauthorized and illegal. Under such circumstances, the right of the relator to a mandamus would seem to be perfectly clear,

unless there is something in the facts presented which show some combination, or that the proposals made are excessive or disadvantageous to the state. (*See Laws of 1854, ch.* 329, § 10, *sub.* 9.) The justice who tried the cause has found that the bid was rejected on account of the form of the certificate, and hence we must assume that there was no other reason for the refusal to give the contract to the relator.

It would, therefore, seem to be manifest that the relator was pursuing the proper remedy in obtaining a mandamus to enforce his rights. His right, however, to a mandamus is objected to in the present case upon the ground that the Court of Appeals have decided the question adversely to the relator, and that whether the board exercised its discretion wisely or not, it can not be coerced by mandamus.

We are referred to two cases which it is insisted hold this doctrine, and which it becomes important to examine.

In the case of *The People,* ex rel. *Belden,* v. *The Contracting Board,* (27 *N. Y. Rep.* 378,) it was held that a mandamus did not lie in favor of the lowest bidder who had given the security required, when the contract had been awarded to another party. Emott, J. who wrote the prevailing opinion, puts his decision upon the distinct grounds that the "Supreme Court ought not to have compelled the board by mandamus to reverse their action, or to make a contract with the relator, after they had already made another contract with another person." He argues, however, that the powers conferred upon the board necessarily involved and implied an exercise of discretion, and in such a case this remedy will not lie. He also urges that a contract having been made with another party, as a matter of discretion, a mandamus should have been denied by the court. Five of the judges were for a reversal of the judgment granting a mandamus. Denio, Ch. J. and Balcom, J. on the ground, among others, that the board having executed a contract,

could not execute another, unless the first was absolutely void; and they thought it good for the purpose of giving the relator his action against the members of the board. Selden, J. dissented entirely, holding that a mandamus would lie. It will be observed that four of the judges only, (not a majority,) concurred with Emott, J. generally; but it does not appear distinctly that they indorsed his entire views. It is evident, therefore, that this case only holds that a mandamus would not lie, because another contract had been awarded and given out.

*The People,* ex rel. *Bullard,* v. *The Contracting Board,* the other case referred to, is not reported, and we have only before us the manuscript opinion of Brown, J. in favor of affirming the judgment of the general term which reversed the decision of the special term, allowing a mandamus. The proposals to do the work were rejected upon the ground that their form and shape rendered the bond inadequate and insecure, and left the state with insufficient security for the performance of the contract. The general term had refused to sanction the order granting the writ, at a time when it would have been serviceable, and the Court of Appeals refused the writ at a time when it would be of no use, putting the decision upon that ground, in part.

In the present case the writ has already been granted, and the relator asks nothing, but seeks to prevent a reversal of his judgment. There is nothing to show but that the contract may have been awarded to him, in compliance with the writ, and the relator have done the work. It would certainly be remarkable and an anomaly in the administration of the laws, if public officers should be permitted to violate a plain provision of the constitution and the law, intended to protect the public from lavish expenditures and favoritism, and when a mandamus was properly granted to compel them to perform their duty, and the relator was satisfied with the relief obtained, if they could delay the proceedings until after a time when the mandamus would be effectual, and then

obtain a reversal of the judgment for that very reason. I think that this can not be sound doctrine, and I do not understand Judge Brown's opinion to sanction and sustain such a principle. The extent to which he goes, as I read his opinion, is, that after the writ has once been refused by the court for good and sufficient reasons which were quite apparent in that case, as I shall presently have occasion to notice, the appellate tribunal will look to ascertain whether it will be of any benefit, and if not, they will not reverse the judgment of the court below and award the writ. No such case is now before us, and hence this reason for denying the writ has no application.

The learned judge also argues the question as to the propriety of allowing the writ against the people of the state, and intimates that it is an unusual and questionable proceeding. He states, however, that he did "not venture to express a definite opinion or take upon himself to determine a question not raised or discussed upon the argument." As no question was made on the argument of that case upon the point suggested, it is manifest that what is said on that branch of the case is *obiter dictum*. And with all due respect for the learning and ability of the distinguished judge, and for the views expressed, I am at a loss to see how a proceeding of this character against state officers to compel them to perform a plain requirement of law and a positive duty in favor of and for the benefit of an individual, can in any way be considered as bearing an analogy to a writ in favor of an individual against the state, or as a proceeding by the people against themselves. After expressing these views, the judge arrives at the conclusion that as the issuing of the writ was discretionary with the court and will be refused when the granting of it will be attended with manifest hardships and difficulties, the considerations to which he had adverted were good grounds for refusing it.

If discretionary, as is and must be conceded, and the appellate court refuses to reverse the proceedings for that

reason, as was stated in the case cited, then is not the rule there laid down a direct authority for this court to refuse to assume to reverse the *discretion* which has been exercised by the court below, after a trial has been had and all the facts and circumstances elicited ? The fact that the general term reversed, in the case cited, can not affect the question of discretion here, because it is apparent that it might have been done for another and a different reason, which was afterwards sustained by the Court of Appeals, and the real ground I think of their decision as is apparent from Judge Brown's opinion.

The true ground upon which the case cited was decided was, that the proposals were excessive, and disadvantageous to the state in the sense of section ten of the act of 1854. The learned judge proceeds to show that there was a good ground for rejecting the proposals made, within the statute which declares that in case the proposals made are, in consequence of any combination or otherwise, excessive and disadvantageous to the state, the contracting board may decline them and advertise anew. And for that reason the discretion with which they were vested by the statute was exercised in a legal and reasonable manner, and there was no sufficient ground for the interference of the courts. As no such question now arises, the ground last stated has no application to the present case.

After a careful examination of the opinion of Judge Brown, I discover no satisfactory reason for holding that it is decisive and controlling in the case at bar. While I yield with respect to the authorative adjudications of a higher tribunal, yet in a case like this, where the right of a party is quite obvious, that right should not be denied, except upon the clearest decisions adverse to its vindication and enforcement.

I think that the question whether the defendants have it in their power at this time to perform the duty required of them does not arise, upon this appeal. That question would properly be presented to the consideration of the court upon

awarding the writ; and the cases which sustain this doctrine were cases where the question arose upon the original application for the writ, or on the trial, and that fact was apparent, which is not so here. (*The People* v. *The Supervisors of Greene*, 12 *Barb.* 217. *The People* v. *The Supervisors of Westchester*, 15 *id.* 607. *The People* v. *Commissioners of Seward*, 27 *id.* 96. *See also* 27 *N. Y. Rep.* 378.)

I have some doubt whether any question of fact or law is presented for review in this case. The judgment roll contains no case embracing the evidence and proceedings upon the trial, and no exceptions appear but those which are incorporated in the decision of the justice who tried the cause. Several cases which are cited hold that a case is essential. (*Conolly* v. *Conolly*, 16 *Howard*, 224. *Rogers* v. *Beard*, 20 *id.* 282. *Otis* v. *Spencer*, 16 *N. Y. Rep.* 614.)

These cases were decided prior to the amendment of 1860 to section 272 of the Code, which would appear to obviate the difficulty, and authorize a review of cases arising before a referee, without the necessity of a case containing the evidence. (*See Ferguson* v. *Hamilton*, 35 *Barb.* 427 ; *Bissel* v. *Pearse*, 21 *How.* 130, 134 ; *Frost* v. *Smith*, 7 *Bosw.* 108.)

Section 272 of the Code applies, however, solely to a review of the decisions of referees. No amendment is made of section 268 which governs appeals from trials by the court, and that section remains as it was, with an express provision that a review can only be had by a case and exceptions. It seems to me, therefore, that it is quite questionable whether any question arises upon the appeal. As, however, I have arrived at a conclusion adverse to the appellant upon the main question which it is claimed arises, I deem it unnecessary to express a decided opinion upon the point last discussed. For the reasons heretofore given, the judgment must be affirmed.

HOGEBOOM, J. I have come to the following conclusions:

1. That we must assume that the defendants put their

refusal to grant the contract to Vickerman solely on the ground that his certificate of deposit did not conform to that required by the notice.

2. That it did so conform in substance, if not absolutely in form, and gave to the defendants the whole benefit of the deposit, equally as if it had been in every respect formal.

3. That such being the case, there was no *discretion* left in the board to award to the relator the contract. He was entitled to it as matter of right and of law.

4. That for such unquestionable legal right a *mandamus* lies; as well by the established practice of the court, which we can not now overrule, as by the principles upon which a mandamus is issued, to wit, that the relater has no other effectual and ample remedy.

5. That this remedy is not defeated upon the theory that the state is the defendant and that a party can not sue the state. For this purpose, the state is not the defendant, but certain ministerial officers who are bound to perform their duties.

6. That this remedy is not defeated by the fact that the time for the performance of the contract has expired. It had not expired when the mandamus was ordered, and a party should never be defeated of his remedy by the delay which the adverse party has occasioned. The mandamus may be fruitless, but that is not the relator's fault. He is entitled to his judgment to enforce his claim to costs, and to make clear his equity against the state. Nor can it *improperly* prejudice the defendants. The contract is probably incapable of practical enforcement; but if it were otherwise, the defendants must abide the consequences which necessarily flow from their illegal act. Besides, for aught we know, the mandamus may have been issued, and the relator ought not to be deprived of the benefit and protection of an affirmance of a legal order. If there were any facts which have arisen since the judgment was entered, which should modify it on appeal, they should have been brought to the notice of the court by

The People *v.* Contracting Board.

affidavit, or by supplemental answer. And possibly, after judgment, if the entering into a contract is shown to be useless, that part of the judgment may be stayed.

This is not like the case of *The People,* ex rel. *Bullard,* v. *The Contracting Board,* where the order for a mandamus having been reversed and none having been issued, the Court of Appeals regarded it as useless to award a mandamus *then* to be issued, which would have been ineffectual.

7. Nor is the remedy defeated upon the theory that another contract has been issued. *There is no proof of this fact.* If there was, I should doubt whether the party was not entitled to it as much as a party is entitled to a sheriff's deed though one has been issued. The party is entitled to his contract, and to the legal results and benefits which flow from it. Perhaps the other party, who has had the first contract, will surrender it voluntarily. Perhaps the party really entitled to it, may successfully perform his. Perhaps he may obtain damages from any body who interferes with the execution of it.

8. I am not clear on the point whether the defendant is rightfully here with his exceptions to the judge's finding. If he is not, I should be in favor of permitting him, on payment of costs, to put his papers in the shape of a case containing exceptions, so as to enable him to go to the Court of Appeals.

9. The judgment should be *affirmed, with costs.*

PECKHAM, J concurred.

Judgment affirmed.

[ALBANY GENERAL TERM, December 5, 1865. *Hogeboom, Peckham* and *Miller*, Justices.]