(5 Misc. Rep. 36.)

PEOPLE ex rel. GEORGE E. MATHEWS & CO. v. CITY OF BUFFALO et al.

(Supreme Court, Special Term, Erie County. August, 1893.)

MUNICIPAL CORPORATIONS—PRINTING CONTRACTS—PROPOSALS.

Buffalo City Ordinances, c. 3, § 10, provides that "when any work or improvement, local or general, is proposed to be done, or any materials are to be supplied, bids or proposals for which are required by statute," a provision may be inserted in the advertisement inviting the proposals that each must be accompanied by a certified check or bond

conditioned on the performance of the work or the furnishing of the goods according to the terms of the proposal. *Held*, that such ordinance does not require publishers of newspapers to submit a certified check or bond with proposals to do the city printing, as to which the city charter (sections 449, 450) provides that on a certain day in each year notice shall be given to the publishers of daily papers in the city that sealed proposals for the city printing will be received, and that the council "shall award the contract to the lowest responsible bidder."

Application by George E. Mathews & Co. for mandamus to the city of Buffalo and others to compel the awarding to relator of a contract for the city printing. Granted.

Charles B. Wheeler, for relator.

George M. Browne, for defendants.

HAIGHT, J. The writ of mandamus is a process issued by the supreme court to some chartered corporate body, officer, or person commanding the doing of a public act or duty. It issues on the relation of any person who has a clear legal right to have the act or duty performed, and for the failure to do which there is no other adequate remedy. Through this writ the courts exercise a control over all public officers, corporations, and persons. It will compel the performance of a ministerial duty, but will not interfere with an officer whose duties are strictly judicial, in whom is vested judgment and discretion, further than to compel such officer to proceed and exercise the judgment and discretion vested in him. This application being for a peremptory writ, conceded material facts only will be considered. The board of aldermen passed a resolution, which was subsequently approved by the board of councilmen, directing the city clerk to notify the publishers of all the daily papers published in the English language in the city of Buffalo that sealed proposals would be received by the common council at its next session for publishing the official proceedings of the common council, and such other matters as are required by law to be published in one of the daily papers, to be designated the "official paper." Pursuant to such direction, the clerk notified the papers of the adoption of the resolution, and invited proposals for doing the work. Thereupon the relator, as publishers of the Buffalo Morning Express, submitted a bid which it is claimed was lower than that submitted by any of the other publishers of daily papers. The bids submitted upon the estimate of the deputy clerk of 8,000,000 ems would account as follows: The Express, $6,680; The Enquirer, $7,530; The Commercial, $8,417; The Courier, $9,850. Each bid was accompanied by a bond conditioned, in substance, that, if the bid or proposal should be accepted, the contract should be in all things performed. It further appears that a question was raised before the board of aldermen as to whether the bid of the relator could be considered on account of an alleged informality of the bond accompanying the same, and that thereupon the matter was referred to the committee on finance; that that committee called for the opinion of the corporation counsel regarding the same, who reported that the bond furnished by the relator, as well as those furnished by the other bidders, were irregular, and were not in the form required by the ordinances.

Thereupon the board of aldermen rejected all of the bids as informal, and directed the clerk to ask for new proposals.

The important question to be here determined is as to whether the bid or proposal submitted by the relator is void by reason of any defect that may exist 'in the bond furnished. The charter of the city provides:

"Sec. 449. The city clerk, under the direction of the common council, prior to the fifteenth day of December in each year, shall give notice to the publishers of the daily papers published in the English language in the city, that sealed proposals will be received by the common council at its next session after the giving of such notice, for publishing all matters required by law or the ordinances to be published in the official paper, and the printing and binding of the minutes of the proceedings of the common council for the ensuing year, showing the number of copies, and the style of printing and binding required. Sec. 450. The common council shall award the contract to the lowest responsible bidder, and the paper in which publication is made shall be designated the 'official paper.'" etc.

It will be observed that no bond is required by these provisions. It is claimed, however, that one is required by chapter 3, § 10, of the ordinances, which is as follows:

"When any work or improvement, local or general, is proposed to be done, or any materials are to be supplied, bids or proposals for which are required by statute, the department or officer charged with the duty of publishing the advertisement inviting the proposals therefor, may specify therein that no proposal shall be considered unless it be accompanied with a certified check, * *. * or, in lieu of such check, that the person submitting a bid or proposal may, therewith, submit a bond with at least two sureties. * * * Such bond shall also contain a condition that if the bid accompanying the same shall be accepted, the principal named in said bond will, whenever required, enter into a written contract for the performance of the work or furnishing of the goods mentioned in the said bid, according to the terms and conditions therein specified, and that, upon the execution of such contract, he will furnish such security as required in this section, not exceeding fifty per cent. of such bid. The officer or department so advertising shall, within ten days, determine which bid or proposal is the most favorable to the city, and shall thereupon indorse upon said proposal the word 'Accepted' and immediately return to the other bidders the checks submitted by them."

Has this ordinance any application to the proposals asked for by the common council for publishing the matters required to be published in the official paper of the city? When any work or improvement, local or general, is proposed to be done, or any materials are to be supplied, bids or proposals for which are required by statute, the department or officer charged with the duty of "publishing the advertisement" inviting the proposals therefor may specify therein, etc. What is meant by the phrase "publishing the advertisement?" Does it mean the printing in the official paper of a notice inviting proposals, or does it mean merely the oral speaking of the matter, or a communication thereof in writing? Undoubtedly the words "publication and advertisement" have a broad meaning as used by the lexicographers, and may include matter not necessarily printed in a paper. But what do they mean as used in this ordinance? Upon referring to the charter, various provisions are to be found in reference to publishing notices in the papers. Section 408 provides that the city shall not enter into a contract with any person for the doing or making of any work or improvement at a

price exceeding $500, until it shall have caused a notice to be published in the official paper and two other daily papers of the city twice a week for two weeks, inviting sealed proposals to do the work or make the improvement pursuant to the plan, specifications, or other proper description of the work or improvement to be specified in the notice. Here we have a plain requirement of the charter that the notice inviting proposals for work or improvements exceeding $500 shall be published, that is, printed in the official paper and two other daily papers of the city twice a week for two weeks. Again, referring to the ordinance, the words used are "publishing the advertisement," indicating that the advertisement is to be published. The advertisement embraces the matter which is to be published. In other words, the advertisement is the notice which is to be published inviting proposals for the doing of the work or furnishing of the materials called for. The ordinance was doubtless framed with reference to the provisions of the charter referred to. But section 449 of the charter requires no notice to be published in any paper asking for proposals to print the proceedings of the council. The clerk is to give notice to the publishers of the daily papers published in the English language in the city. This may be done by a written notice delivered to them. It appears, therefore, the proposals for the printing are not to be placed upon the same footing with proposals for other work ordered for the city. But it is contended by the defendant that the court, in construing the ordinance, ought to give it a liberal construction, and that public policy requires a certified check or bond to be submitted with the bids in order to protect the city.

This brings us to a consideration of the purpose and necessity of the ordinance. In ordering work and material for the city the gates are opened for the world to come in as bidders. A temptation is here presented to irresponsible persons, not possessed with facilities to furnish the work or material called for, to interpose bids for speculative purposes. If the contract is awarded to them as the lowest bidder, they endeavor to sell the same to some person or contractor who can perform, and, failing in this, they refuse to enter into the contract with the city. The failure of the bidder to enter into the contract necessitates the reletting of the contract, and involves the city in the expense of readvertising the notice for proposals. It was to indemnify the city against this expense that the bidder was required to submit with his bid a certified check, or in lieu thereof a bond, conditioned that he would enter into the contract in case his bid should be accepted. There is but little, if any, necessity for a certified check or bond to accompany proposals for the city printing. In receiving proposals under the charter the gates are not opened to the public, so that any person may submit proposals, but they are limited to the publishers of the daily papers printed in the English language in the city of Buffalo. These publishers, six or seven in number, are the only persons privileged to submit proposals. They are invited to submit proposals. No printing of notice or publication of advertisement in any of the papers is required, no expense is incurred, and consequently there is no such

necessity for a bond to indemnify the city, as exists under the other provisions of the charter. I am inclined to adopt the view that the ordinance·has reference to work or materials ordered, in which the notices for proposals are required by the charter to be published in a paper, and has no application to the proposals for the city printing under section 449 of the charter. The bid was therefore regular, and should have been so considered by the aldermen.

It is claimed that the aldermen are invested with judgment and discretion. So they are. They are required to determine whether the relator is responsible. This is a question of fact which the aldermen are required by the charter to determine, but it appears from the affidavit of the aldermen that they have not as yet considered that question. They also, doubtless, are charged with the duty of determining the question as to whether the relator is the lowest bidder. In passing upon the facts they act judicially, and are bound by the evidence. The bids presented from the respective papers speak for themselves upon this question. It has also been said that the estimate of 8,000,000 ems was too low; that probably 15,000,000 ems would be required; that the bids of the respective papers might be more favorable if based upon such an estimate. It appears, however, that the three publishers of daily papers submitting bids, other than the relator, have each had the contract for the city printing within the last three years, and were fully informed as to the probable amount of matter that would be required to be printed. It is also claimed that the board of aldermen should have a discretionary power to accept or reject a bid, independent of the facts to which I have alluded. The courts have been, and should be, quite liberal in reviewing the acts of contracting boards in this regard; and, where it is apparent that the bid was deceptive, unbalanced, fraudulent, collusive, or disadvantageous, the board ought to reject the bid; and where the bidder is the highest instead of the lowest, and the lowest has been rejected, because of irregularity, the board may reject all, and the court, in the exercise of its discretion, will not interfere by mandamus. People v. Contracting Board, 33 N. Y. 382; Walsh v. Mayor, etc., 113 N. Y. 142, 20 N. E. Rep. 825. But where, however, the contracting board is required by law to give a contract to the lowest bidder, and the person making the lowest bid has in all respects complied with the law, the board will be compelled by mandamus to give the contract to him. People v. Contracting Board, 46 Barb. 254. I think, therefore, that a mandamus should issue requiring the board of aldermen to consider the relator's bid as valid and regular, and that they determine whether or not the relator is responsible, and the lowest bidder, free from deception, fraud, or collusion, and, if they find in the affirmative, to award the contract to the relator. So ordered.