(67 Misc. Rep. 529.)

PEOPLE ex rel. LORD CONST. CO. v. STEVENS, Superintendent of Public Works, et al.

(Supreme Court, Special Term, Albany County.   May, 1910.)

1. CANALS (§ 15*)—CONTRACTS—CONSTITUTIONAL PROVISION.

Const. art. 7, § 9, providing that all contracts for work or materials on any canal shall be made with the person who shall offer the lowest bid, with security, was not intended to confer a right upon the bidder, but to protect the state.

[Ed. Note.—For other cases, see Canals, Dec. Dig. § 15.*]

2. EVIDENCE (§ 23*)—JUDICIAL NOTICE—PUBLIC CHARACTER AND IMPORTANCE OF WORK ON STATE CANALS.

The court will take judicial notice of the public character and importance of the work authorized to be done on state canals by Laws 1903, c. 147, and of the necessity for upholding the acts of the officers charged with its administration, and sustain those acts unless it appears that they are fraudulent, arbitrary, and capricious or clearly illegal.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 23.*]

3. CANALS (§ 15*)—CONTRACTS—RIGHT OF SUPERINTENDENT OF PUBLIC WORKS TO IMPOSE CONDITIONS OF BIDS.

Laws 1903, c. 147, § 7, provides that the advertisement for bids for work to be done on the canals authorized thereunder shall be limited to a brief description of the work proposed to be let, with an announcement stating where the maps, plans, and specifications are on exhibition, and the terms and conditions under which bids will be received, the time and place where they will be opened, and such other matters as may be necessary to carry out the provisions of the act. Held, that the superintendent of public works had authority to impose as a condition of considering bids for work that the bidder should deposit with him a reasonable sum, and may refuse to consider a bid where the deposit is made by check payable, not to his order, but to the order of the State Treasurer.

[Ed. Note.—For other cases, see Canals, Dec. Dig. § 15.*]

4. CANALS (§ 15*)—CONTRACTS FOR WORK—CONDITIONS FOR BIDDING.

Laws 1903, c. 147, § 7, provides that the advertisement for bids for work to be done on canals authorized by the act shall be limited to a brief description of the work proposed to be let, with an announcement stating where the maps, plans, and specifications are on exhibition, and the terms and conditions under which bids will be received, together with such other matters as may be necessary to carry out the provisions of the act. Canal Law (Consol. Laws, c. 5) § 43, provides that no public officer or appointee connected with the care or management of the canals shall be interested in any contract on the canals as a contractor, surety, or otherwise in his own name or in the name of any other person, or derive any benefit from the ordinary or extraordinary expenditures upon the canals beyond his established compensation. Held, that the superintendent of public works may require that prices bid on work shall be written in with ink in both words and figures, and may refuse to consider a bid where the prices are only entered in figures.

[Ed. Note.—For other cases, see Canals, Cent. Dig. §§ 15–17; Dec. Dig. § 15.*]

5. CANALS (§ 15*)—CONTRACTS FOR WORK—CONDITIONS FOR BIDDING.

The superintendent could promulgate a rule requiring that the bids of corporate bidders be subscribed by their presidents, secretaries and treasurers, and could reject a corporate bid signed only by the president.

[Ed. Note.—For other cases, see Canals, Cent. Dig. §§ 15–17; Dec. Dig. § 15.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. MANDAMUS (§ 172*)—SCOPE OF INQUIRY.

 Upon application by a bidder for work on canals for a peremptory man-damus to compel the superintendent of public works to consider his bid, the court may consider any proper reason for not considering the bid or awarding the contract to relator, and is not limited to a consideration of the reasons stated by the superintendent of public works.

 [Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 381-385; Dec. Dig. § 172.*]

Mandamus by the People, on the relation of the Lord Construction Company, against Frederick C. Stevens, superintendent of public works, and another. Writ denied.

 Application on order to show cause for a peremptory writ of mandamus to compel Frederick C. Stevens, superintendent of public works, to consider the bid of the relator to perform certain work on the canals of the state, and award the contract therefor to the relator. The superintendent of public works duly advertised for proposals under certain terms and conditions for the improvement of the Erie, Oswego, and Champlain Canals. The relator and the defendant D'Olier Engineering Company submitted proposals therefor within the time limited, which proposals were submitted upon forms prepared by the superintendent of public works, which contained a reference to the statute, information for proposers, the terms and conditions upon which proposals would be received, specifications for the work, and other data, besides a blank for the itemized proposal itself. The relator failed as a fact to form-ally comply with several of the conditions for the receipt of proposals.

 The superintendent of public works, upon opening the bids on April 7, 1910, refused to read the proposal of the relator, which was about $4,000 in amount less than that of the defendant D'Olier Engineering Company, stating at the time as his ground for refusal that the certified check submitted by the rela-tor was not payable to the superintendent of public works, but to the State Treasurer, in violation of the law and the conditions of the proposal. The superintendent notified the relator by letter of this refusal and the reason, and on April 9, 1910, awarded the contract to the D'Olier Engineering Com-pany. Upon receipt of notice of this refusal, the relator verbally protested against the awarding of the contract. Later the relator filed a formal protest which misdescribed the name of the relator, and gave the name of another company, and sent to the superintendent of public works a new check, drawn payable to the superintendent of public works, which he refused to receive. The contract previously awarded to the D'Olier Engineering Company was ex-ecuted by that company on the 12th of April, 1910. On the 13th of April, 1910, relator's corrected formal protest was received by the superintendent, and on the same day the contract was approved by the Attorney General. The suc-cessful contractor has not yet performed any work except preliminary exam-ination of the work prior to actual execution.

 The relator obtained an order to show cause from Mr. Justice Betts, staying both the superintendent of public works and the D'Olier Engineering Com-pany, and requiring the defendants to show cause at Special Term of this court, among other things, why the superintendent of public works should not entertain and consider the bid of the relator and award the contract to the relator, and why a peremptory writ of mandamus should not issue in the premises, which order was served April 18, 1910.

 Upon the hearing of this application at the Special Term held April 23, 1910, the defendants set up additional causes of refusal to entertain the bid of the relator.

Eidlitz & Hulse (Ernest F. Hulse, of counsel), for relator.

Edward R. O'Malley, Atty. Gen. (Andrew E. Tuck and Wilber W. Chambers, of counsel), for Superintendent of Public Works.

Henry W. Jessup, for defendant D'Olier Engineering Company.

LE BOEUF, J. Upon the argument of the motion for a peremptory writ of mandamus, stress was laid by counsel upon the claim that the check objected to by the superintendent of public works substantially conformed to the conditions upon which bids were to be received. Equal stress was laid upon the provisions of the Constitution as giving the relator a constitutional right to the contract as being the lowest bidder.

If the sole question before me was whether or not the check substantially conformed to the requirements, I should be of the same mind as I was upon the argument of this motion, and hold that it does.

The case is somewhat different from that presented in People v. Contracting Board, 46 Barb. 254, where the relator's certificate of deposit certified that a reasonable sum was deposited to the credit of himself, and then was by the relator indorsed over to the auditor, instead of being a certificate certifying the deposit to the credit of the auditor directly, as the law required. Here the check was drawn payable to the Treasurer of the state of New York, instead of to the superintendent of public works, as both the law and the conditions of bidding required, but the relator unfortunately used a voucher check, which contained a great mass of printed matter, and particularly contained, where the indorsement would naturally be made, the legend, "Do not indorse if incorrect." The balance of the printed matter following this legend, and probably the legend itself, evidently referred to the reverse side of the check, which reverse blank was the common form for an account or claim, but was not filled in, and may fairly be deemed surplusage. So far as the legal effect of the expression, "Do not indorse if incorrect," is concerned, minds might differ; but it appears to me that this would not have been sufficient to have prevented the collection of the check by the State Treasurer, had it been indorsed by him, and that the relator would be estopped from setting up any objection to its payment to the State Treasurer, who, in case of forfeiture, was by statute authorized to collect it. The bank could not object because it had certified the check as payable to the payee and indorser, the State Treasurer. The state of New York could alone collect the check. The duty of the superintendent, had he awarded the contract to the relator and found it necessary to resort to the check, was to turn it or the deposit over to the State Treasurer; and it is apparent from the reading of the conditions of the Blue Book attached to the bid itself that the purpose was to allow the superintendent to hold the check, or deposit it and turn over the deposit to the State Treasurer, if that became necessary—otherwise to return either the check or the deposit to the unsuccessful bidder.

But I am not satisfied that the relator, under any circumstances, has a constitutional right to the contract. The constitutional provision (section 9, art. 7), "all contracts for work or materials on any canal shall be made with the person who shall offer, bid or provide the same at the lowest price, with adequate security for their performance," was evidently not intended to confer a right upon this relator, but, rather, to protect the state of New York. The Court of Appeals has held in People v. Contracting Board, 27 N. Y. 381, 382, that:

"The writ of mandamus is to some extent, at least, in the discretion of the court to grant or refuse; especially where, as in this case, no property of the relator has been taken or affected, and his claim rests altogether upon the interests of the state to have its work done by the lowest bidder, and not upon a legal right on his part. People v. Canal Board, 13 Barb. 450, and cases cited. The only legal right of the relator in such a case, if he could have any, would be to damages to him for refusing him the contract."

The people of the state have entered upon an enterprise of the greatest magnitude, in which millions of dollars have been and are to be expended. So important was the question that it was made the subject of special submission to the people themselves; and the statute under which the superintendent of public works is operating (Laws 1903, c. 147) was itself also submitted to the people. This court will take judicial notice of the public character and importance of the work, and of the necessity for upholding the acts of the officers charged with its administration, and sustain those acts, unless it appears that they are fraudulent, arbitrary and capricious, or clearly illegal.

It is claimed that the superintendent had authority to demand strict compliance with the conditions of bidding; and Matter of Marsh, 83 N. Y. 431–435, is cited. There under the statute the contract was to be let to the lowest bidder, which, it was claimed, had not been done by reason of noncompliance with certain conditions, and the court said:

"But if the commissioner had the right to insert the specification, as we hold he did have, then he had the right to require literal and exact compliance therewith, and to decline all bids as informal which did not comply therewith."

But this reasoning did not in fact determine the case, for it was found for other reasons as a fact that the accepted bid was the lowest. Moreover, the action was one to set aside an assessment brought by an aggrieved taxpayer and not a contest between the rival contractors and the state, as here.

If necessary, to find the proposition, I should base it not on this authority, but rather upon the terms of the act of 1903 and the provisions of the canal law (Consol. Laws, c. 5), which (as pointed out hereafter) clearly give the superintendent authority to impose the conditions here in controversy; and to my mind, in view of the character of the work and the loss to the people of the state, through failure to proceed with expedition, give him the right to insist upon a literal compliance with those conditions. The loss of this time to the state is of greater importance than the $4,000 additional which it is required to pay to the defendant D'Olier Engineering Company. The magnitude of the work is such that the power is properly vested in him, else will the courts, before this work is completed, be compelled to stop its progress by injunction, such as was here granted, while questions which should be passed upon by him are being determined by the courts of last resort.

But, upon other grounds as well, the facts in this case warrant a denial of the writ, which the relator's chief authority (People v. Contracting Board, 46 Barb. 259) deems is discretionary.

Considered from the standpoint of the exercise of this court's discretion, we may concede that the superintendent stated no other reason to the relator for his refusal to read or act on his bid than the in-

formality of the check. The superintendent's two letters are specific, in that they called the attention of the relator only to that defect; but it is a fact, none the less, which must now be considered by this court on the question of discretion, that this bid did not strictly conform to the requirements of bidding in two other respects; and, so far as this noncompliance existed, whether or not the superintendent called it to the attention of the relator is of little moment, if the noncompliance is a substantial noncompliance, and the conditions such as the superintendent had the right to impose. We find this noncompliance now to exist when an appeal is made to this court's discretion to override the superintendent's act in awarding the contract to one who did comply with all the requirements. The relator cannot claim ignorance of these conditions, for they were annexed to the Blue Book which formed part of its bid; and the relator concedes that it is the fact that these variances existed, but asserts that they were trivial, and that they should not be considered, because either not set up· immediately at the time of the refusal to receive the bid, or as the basis of such refusal.

Leaving the question of their materiality, we turn to the decision upon which the relator relies as not permitting this court to consider any other reason than that set up in the superintendent's letter, which is People ex rel. Empire State Trotting Club v. State Racing Commission, 190 N. Y. 31–35, 82 N. E. 723. The court in that case said:

"While the general rule is that mandamus will not lie to compel the performance of a power, the exercise of which lies in the discretion of the officer against whom the writ is sought, to that rule there is the well-recognized exception that the action of the officer must not be capricious or arbitrary, and, if such be the character of the reason for refusing to act, the writ will lie— [citing cases]. In the very recent case of People ex rel. Lodes v. Department of Health, 89 N. Y. 187 [82 N. E. 187, 13 L. R. A. (N. S.) 894], we have said, through Haight, J., referring to the action of the board in revoking a license: 'If, however, their action is arbitrary, tyranical, or unreasonable, or is based upon false information, the relator may have a remedy to right the wrong which he has suffered.'"

Now, in the case from which these quotations have been made, "the character of the reasons for refusing" referred to the reasons set up in the answer in the proceedings for the writ itself. In the answer were denials in gross which were claimed to be merely of conclusions and too indefinite to raise an issue. Then there was a specific reason given which the court insisted was not sufficient. An examination of the other cases cited in that case shows that the ruling is confined to failure to state facts upon the mandamus proceedings themselves, which are sufficient reasons.

Moreover, as this application is discretionary, though the facts existing were not stated by the superintendent as his reasons, though he did not act on them, it is unchallenged that they are facts, and so long as they exist this court must consider them. Otherwise, on relator's theory, this court must find that the action of the superintendent was capricious and arbitrary, by reason of the refusal to receive the check, though actual facts are existing, which are of vital interest· to the state, and, if made the reason for the refusal, would be sufficient to have warranted that refusal.

The law in question undoubtedly gave the right to impose the conditions which were imposed. Section 7 provides:

"The advertisement shall be limited to a brief description of the work proposed to be let, with an announcement stating where the maps, plans and specifications are on exhibition, and the terms and conditions under which bids will be received, and the time and place where the same will be opened, and such other matters as may be necessary to carry out the provisions of this act."

Another provision of law was in existence at this time which is to be taken into consideration upon the subject of conditions—section 43 of the Canal Law:

"No public officer or appointee connected with the care or management of the canals shall be interested in any hydraulic works dependent upon the canals for a supply of water, or in any line of boats * * * either directly or indirectly, in any contract on the canals as a contractor, surety or otherwise, in his own name, or in the name of any other person, or either directly or indirectly derive any benefit from the ordinary or extraordinary expenditures upon the canals beyond his established compensation; or if any officer or appointee shall at any time while holding such office or appointment be or become so interested, or derive any such benefit, he shall forfeit his office or appointment and be discharged therefrom, and any contract in contravention hereof shall be void."

With these statutes in mind, turning to the Blue Book and information for proposers, we find that strict injunction was given to bidders to comply with the conditions imposed, saying:

"Award can only be made to the person or persons whose proposals shall be lowest in cost to the state for doing the work, and which shall comply with all the provisions required to render it formal."

Now, one of these provisions was "the prices bid shall be written in with ink in both words and figures." It is conceded that the relator entered his only in figures, and not in words. It is stated as an excuse that there was no room in the blank, but an examination of the blank furnished shows, first, a preliminary estimate of quantities and cost, in which there is not room, because it simply is intended to give the bidder the benefit of that preliminary estimate. In the next item, itemized proposals, after each item appears the word "for," with a blank line clearly intended to be filled in in words. The figures are to be placed after the words. And, whether the blank was sufficient or not, the rule was specific; and, if power existed to promulgate it, compliance with it could be demanded. I have no hesitancy, after examining the statutes and the other papers submitted, in deciding that this requirement was essential to prevent confusion, mistake and even fraud; and noncompliance with it was not a trivial, but a material, variance.

But the next rule is perhaps of greater importance:

"Proposers are required to give the name or names, together with place of residence, and the name or names of all persons interested with them; if a corporation, the names of the president, secretary and treasurer will be given. In case it shall be discovered that the person or persons making the proposal is interested in any manner in any other proposition for the same piece of work, both such proposals will be deemed thereby to be rendered informal, and will not be considered. Every proposal to be formal must be in all respects fair, and without collusion or fraud. Attention is called to the fact

that the statutes forbid any officer of the state, or any person in the employ of the state, to be either directly or indirectly interested in any contract for canal work, or in the furnishing of supplies for any such work."

The relator attached to its bid the name of its president, but did not attach or indicate the name of its secretary or treasurer.

Without reference to these statutes and conditions, at first impression that fact would seem to be of little importance; but the attention of the proposer is called to this clause of the law of the state and the reason for the requirement, and the importance of enforcing that provision of the canal law needs no argument. It has evidently been thought that the names of the two other officers of the corporation might furnish some information to the superintendent in exercising the power conferred upon him by the statute—that of refusing to entertain a bid in which a public officer, or other person within the statute interested in the canals, was interested. The terms of the canal law plainly indicate that every care is to be taken to prevent any person connected with the state government, or its works, from obtaining any profit by reason of these contracts. The opportunities for fraud, if it were otherwise, are too obvious to need discussion.

Without attempting to decide how far reaching, in the case of a corporation, are the provisions of that section, it is enough that this condition bears some reasonable relation to the purposes sought to be attained by the statute. In the view which I take of the superintendent's powers, it was a material condition, in that the superintendent expressly called to the attention of the bidder the public policy which the superintendent believed was to be subserved by compliance therewith, and which the relator saw fit to disregard. The principle involved was clear, however inadequate the condition might be, in the case of a corporation, to fully inform the superintendent who was interested in the contract. Here, then, were two material conditions which were disregarded by the relator.

The superintendent may be deemed to have passed only upon the informality of the check on the 7th of April, 1910; but, when the relator comes to this court with this state of facts, he does not disclose a condition of affairs which warrants this court in exercising its discretion to issue a peremptory writ of mandamus.

The application for the writ is therefore denied; but, in view of the peculiar facts involved, without costs.

Application denied, without costs.