## SUPREME COURT.

In the Matter of an Application for a mandamus by WEED, PARSONS & Co. agt. ALLEN C. BEACH, secretary of state, and FREDERICK P. OLCOTT, comptroller of the state of New York.

*Mandamus — state printing — When unsuccessful bidder not entitled to writ to compel secretary of state and comptroller to change their award.*

The law to provide for state printing (*chapter* 24 *of Laws of* 1846) requiring the secretary of state and comptroller to give notice, as prescribed therein, that they will receive bids for printing, and on the expiration of the notice "open said proposals and enter into a contract, or contracts, with such person or firm as shall make the lowest offer or bid to do such printing," and they having made an award, another party claiming that the bid of the successful party was not in accordance with the proposals and that their's was and that they were the lowest bidders, is not entitled to a mandamus directing the secretary of state and comptroller to canvass again the bids received and award the contract to them.

Where the law requires, as it does in this matter, that a contract shall be made "with such person or firm as shall make the lowest offer or bid," such bid must substantially conform to the proposals made.

On motion for a peremptory mandamus in this matter:

*Held,* that the motion should be denied, because,

*First.* The moving parties present no better claim to the printing than their successful competitor, both bids being informal in matters of substance.

*Second.* No bidder in his offer followed the proposals. Every bid including those of the applicant was radically defective.

*Third.* The state officers having endeavored to obtain bids in a certain form and failed were at liberty, as against such faulty bidders, to examine all and according to their best judgment, award the contract to the lowest bidder.

*Fourth.* A contract to do the printing having been actually made with another party, this court should not, on the authority of *The People*

*ex rel. Belden* agt. *The Contracting Board* (27 *N. Y.*, 378), grant the relief asked for, even though the bid of the applicants was in proper form and lower than that of the party to whom the work was let.

*Albany Special Term, February,* 1879.

MOTION for a peremptory mandamus.

*Henry Smith,* for motion.

*A. Schoonmaker, Jr.,* attorney-general, opposed.

WESTBROOK, *J.* — In pursuance of chapter 24 of the Laws of 1846, the secretary of state and the comptroller issued "proposals for department printing." Bids were received from The Argus Company, Weed, Parsons & Co. and several other parties. On the 20th day of January, 1879, a contract was made with The Argus Company to do such printing, and Weed, Parsons & Co. claiming that the bid of The Argus Company was not one in accordance with the proposals and that their's was and was also the lowest in amount of all the offers, ask that the said secretary of state and comptroller be directed to canvass the bids received and award the contract, for which proposals were invited, to them.

The act, chapter 24 of the Laws of 1846, requires the secretary of state and the comptroller to give notice, as prescribed therein, that they will receive bids for printing, and on the expiration of the notice "open said proposals and enter into a contract, or contracts, with such person or firm as shall make the lowest offer or bid to do such printing."

The advertisement for bids declared : " For all printing in book or pamphlet form for any of the state offices, or for circulars on cap or post paper, the proposal should state the price for 1,000 ems for composition, restricting the estimate to the printed lines, and separately the price for paper, press work, folding, gathering, collating, stitching and trimming for 100

copies, and the rate per hundred for each additional hundred copies required."

The advertisement further said : " Samples of the blanks and other printing required for the said public offices may be seen at the office of the secretary of state and the other state departments, and the proposals must state the price, by the hundred, for blanks of every description used in any or either of the said departments."

The bid of The Argus Company, which was accepted, declared that it would do " the 'department printing' for the state of New York, in accordance with all the terms and conditions of the advertisement of the secretary of state and comptroller, a copy of which is hereto attached, at the following prices :

" Composition for one thousand ems, fifty cents.

" For paper, press work, folding, gathering, collating, stitching and trimming, per 100 copies, fifty-three cents ; and for each additional 100 copies, fifty-three cents.

"And we hereby further agree to do all the department printing, in accordance with the terms of said advertisement, for the gross sum of thirty-four thousand dollars."

The contract made with The Argus Company specifically provides for doing the work at the prices set forth in the bid, and then declares " the whole sum claimed or allowed and paid for the printing, work done and performed and materials, as herein required to be done, performed and furnished," shall not " exceed the sum of sixteen thousand dollars."

It does not require argument to show that when the law requires, as it does in the matter of the printing, which is the subject of controversy upon this application, that a contract shall be made " with such person or firm as shall make the lowest offer or bid," that such bid must substantially conform to the proposals made. Any other rule would destroy all fair competition. If, for example, the bids are required by the proposals to be upon different kinds of work, the price for each to be separately stated, a bid in gross for all the work

should not be received, because those not thus bidding have not been called upon to compete for any such thing; and the acceptance of any such gross bid is a violation of the law, because the law requires competition and that has not been secured.

In testing the bid of The Argus Company, which was accepted, reference must be made to the proposal. So much of that as is necessary for the purpose of this discussion has been given. It will be remembered that that required bids as follows : First. "For all printing *in book* or *pamphlet* form for any of the state offices, or for *circulars* on cap or post paper." The price for the composition of such work for 1,000 ems, restricting the estimate to the printed lines, was to be given, and then the price for paper, press work, folding, gathering, collating, stitching and trimming for 100 copies, and the rate per hundred for each additional hundred copies required were to be separately stated; and, second, for such *blanks* as were used in the public offices, the price of which "by the hundred," it was declared, "the proposals must state."

If the bid of The Argus Company be examined it will be found that there is no proposal or bid for " blanks," *eo nomine,* and, consequently, no price specified at which they will be furnished "by the hundred." It is possible that they were intended to be covered by the offer which specifies the price of composition per thousand ems, and that for paper, press work, &c.; but it is clear that there is no bid for them in the form required, and that, consequently, such bid could not compete with those in proper form, if any such there were.

Neither was the offer made by The Argus Company to do the work for a gross sum one which, as against any conforming to the specified requirements, should have been acted upon, for it was in a form for which no competition had been invited, and for which none was secured. It is true, that it is urged, that no bid in gross has been accepted, but it is clear that the party making it has, by the terms of the contract,

secured the benefit thereof in inducing the agreement. By inserting in such agreement a clause that the price paid should not exceed a gross sum named, it can be argued as it has been, though detailed prices mentioned are higher than those offered by others, yet as the effect thereof is limited by a gross sum to be paid for all work done thereunder, that such agreement secures a lower price to the state than the offer made by competitors. That the gross bid of The Argus Company has really controlled the contract will be manifest by comparing its bid and contract with the offer of Weed, Parsons & Co., and from the perusal of the opposing affidavit made by the secretary of state and the comptroller on this motion.

The bid and contract of The Argus Company was "fifty cents for each 1,000 ems of actual composition," and "the further sum of fifty-three cents for all paper, press work, pressing, folding, gathering, collating, stitching and trimming for each 100 copies of a signature of eight pages of any blank, circular, book, pamphlet, school register, canal collector's certificate, blank or slip of law."

The bid of Weed, Parsons & Co., for the same species of composition (except certain things, for which a separate offer was made), was fifty cents, and for the stitching and binding, etc., etc., fifty cents. In other words, The Argus Company received one dollar and three cents for work, a part of which, at least, Weed, Parsons & Co., offer to do for one dollar.

Messrs. Beach and Olcott depose that Weed, Parsons & Co., "have had the contract for the printing for the state departments and state offices, for a great many years past, and that, according to the best information accessible, from the records and vouchers in the comptroller's office and the appropriations made, the cost of such printing has for many years exceeded the aggregate to which the same will amount, under the contract with The Argus Company, and that the cost thereof, according to deponents' best information and belief, exceeded for the past two years, the sum of $35,000, and that by the con-

tract with The Argus Company the total cost is limited to $32,000 for two years."

It is apparent, therefore, that while the contract with The Argus Company does not profess to be for a gross sum, and though other considerations, which are stated in the affidavits of the secretary of state and comptroller, may have induced them to suppose that The Argus bid and contract were more advantageous to the state than the offer of Weed, Parsons & Co., yet that the offer in gross and the limitation upon the total cost of all the work done, were important factors in the procuration of the contract sought to be annulled. As, then, The Argus bid varied from the advertisement in important particulars, the motion for the mandamus, if the court has the power to do what it is asked to do, might be granted, provided there are no legal exceptions to the bid of Weed, Parsons & Co., and whether there are or are not any such will now be considered.

It has already been stated that the advertisement required offers or bids "for *all* printing in *book* or *pamhlet* form * * * or for *circulars* on cap or post paper " at a price "for one thousand ems of composition," with a separate statement of the cost per hundred for paper, press work, etc., and for *blanks* the price per hundred." No offer specifying the price of any book, or pamphlet for each copy thereof, was invited.

The bid of Weed, Parsons & Co., upon books and pamphlets, instead of being confined to the price of composition for 1,000 ems, and a separate statement of the cost of binding, stitching, etc., as the advertisement required, placed upon certain specified ones a price per copy. After making propositions, which closely followed the proposals, separate and distinct offers are made to supply the "Legislative Manual," "School Registry Books," and "Calendar for the office of the Clerk of the Court of Appeals," at a stated price for each copy thereof. The effect of this is to take these items out of their general bid. If then their offer be accepted,

Weed, Parsons & Co., will secure a contract in a form and upon a basis on which others have not competed.   Precisely the same argument can be used against them, which can be made against The Argus Company.   Their offer is for a gross price per book or pamphlet upon certain books and pamphlets, whilst that of The Argus is limited by a gross sum for all work.   If competition was not invited for the latter it was not for the former, and the objection to the acceptance of either is plain.

Having reached the conclusion that grave objections can be made to a contract founded upon either the bid of The Argus Company or that of the applicants, it follows that no order can be made to the extent asked for upon this motion. It has been a matter of some doubt, however, whether an order should or should not be made directing the issue of new proposals, and the making of a contract thereunder, provided the court had that power.   The conclusion has been reached to simply deny the motion and make no further order whatever, because:

First. The moving parties present no better claim to the printing than their successful competitor.   Both bids were informal in matters of substance.

Second. No bidder in his offer followed the proposals. Every bid, those of others as well as those of the parties interested in this motion, was radically defective.

Third. The state officers, having endeavored to obtain bids in a certain form and failed, were at liberty, as against such faulty bidders, to examine all, and, according to their best judgment, award the contract to the lowest bidder.

Fourth. In *The People ex rel. Belden* agt. *The Contracting Board* (27 *N. Y.*, 378), the court of appeals have held that when the law required " the canal contracting board to award contracts to ' the lowest bidder who will give adequate security,' and it having made an award, a lower bidder who has given the security required, is not entitled to a mandamus."   That decision, whatever may be the opinion of this court as to its

Weed, Parsons & Co. agt. Beach.

soundness, must control action. It is a case exactly parallel to the one before us, provided the bid of Weed, Parsons & Co., had been in the form required by the state officers. The principle thereby enunciated would prevent the relief asked, even though the moving parties had fully complied with all requirements. When, however, the movers present no legal right to any relief, the court should not, without hearing the party who holds the contract, make any order affecting it, and to do so it is, probably, powerless.

The case of *The People ex. rel. Vickerman*, agt. *The Contracting Board* (26 *Barbour*, 254) is not in conflict with that of Belden just cited. The latter is distinguishable from the former, and was so distinguished in the opinion written in the Vickerman matter, by the fact that the contract, which the relator sought in that of Belden, had been let to another party. The contract which the present proceeding aims to obtain for Weed, Parsons & Co., has been actually made with The Argus Company, and the Belden decision is, therefore, exactly applicable.

The motion for a mandamus is denied.