E. J. LORD AND J. J. BELSER, COMPLAINANTS, *v.*
JOHN WALKER, C. S. HOLLOWAY, SUPERIN-
TENDENT OF PUBLIC WORKS, AND J. H.
FISHER, AUDITOR, RESPONDENTS.

EQUITY APPEAL FROM FIRST CIRCUIT.

SUBMITTED JANUARY 10, 1905.    DECIDED JANUARY 28, 1905.

HARTWELL AND HATCH, JJ., AND CIRCUIT JUDGE DE BOLT
IN PLACE OF FREAR, C.J.

CONTRACT FOR PUBLIC WORKS—*compliance with terms of advertisement.*
    The superintendent of public works advertised for proposals for
    the performance of certain public work, and required that each
    proposal must be accompanied by a certified check of 3 per cent.
    of the amount of the proposal, payable to the superintendent of
    public works as surety that if the proposal be accepted a contract
    would be entered into. W. filed a proposal and with it a bill of
    exchange upon a commercial house, certified by the latter, for the
    requisite amount payable to the order of the superintendent of
    public works.
    Held, within the discretion of the superintendent of public works
    to take the security tendered by W. as a substantial compliance
    with the terms of the advertisement calling for tenders.

OPINION OF THE COURT BY HATCH, J.

The plaintiffs brought a bill for an injunction to enjoin and
restrain the superintendent of public works from executing a
certain contract with the defendant Walker for dredging the
Alakea street slip and from approving any vouchers for work
done or materials furnished under the contract, and to restrain
the auditor of the Territory from approving any vouchers for

work done or materials furnished under the contract or issuing any warrants in payment of bills or claims for work done or materials furnished, and to restrain the defendant Walker from receiving any money under the contract.

The bill shows that the superintendent advertised for bidders as follows:

### DREDGING ALAKEA STREET SLIP.

"Proposals will be received at the office of the supt. of public works, until 12 o'clock noon of Nov. 19th, 1904, for excavating and dredging Alakea street slip, Honolulu, T. H.

"Plans and specifications are on file at the office of the asst. supt. of public works, copies of which will be furnished intending bidders on receipt of $5, which sum will be returned intending bidder after he has deposited his bid and returned the plans and specifications.

"Proposals must be submitted on the blank forms, which will be furnished by the asst. supt. of public works and enclosed in a sealed envelope addressed to Hon. C. S. Holloway, supt. of public works, Honolulu, T. H., endorsed 'Proposal for excavating and dredging Alakea St. slip.'

"Each proposal must contain the full name of the party or parties making the same and all persons interested therein and must be accompanied by a certified check of 3 per cent. of the amount of the proposal, payable to C. S. Holloway, superintendent of public works, as surety that if the proposal be accepted, a contract will be entered into.

"No proposal will be entertained unless made on the blanks furnished by the asst. supt. of public works, previous to 12 o'clock noon on the day specified.

"The superintendent reserves the right to reject any or all bids.

"C. S. HOLLOWAY,
"Superintendent of Public Works.
"Dept. of Public Works, Honolulu, Sept. 6th, 1904."

4.

"That in response to said advertisement several parties filed with said Superintendent of Public Works proposals or bids for the work referred to therein, among them being the respondent, John Walker, and said complainant, Lord and Belser.

5.

"That accompanying the proposal or bid of said complainants was a certified check of 3 per cent. of the amount of the proposal made payable to said C. S. Holloway, Superintendent of Public Works, as surety; that if the proposal be accepted a contract would be entered into, in accordance with the provisions of said advertisement.

6.

"That upon the opening of said bids or proposals, it was found that the lowest bidder was the said respondent, John Walker. And that it also then appeared that the bid of said John Walker was not accompanied by a certified check of 3 per cent. of the amount of his proposal as required by the terms of the aforesaid advertisement.

7.

"That said bid of said respondent, John Walker, was accom-panied by a pretended certified check, consisting of a piece of paper containing the following words and figures, to wit:

"Honolulu, 19 November, 1904.

"Pay to the Superintendent of Public Works or order the sum of six thousand dollars.

"To Messrs. Theo. H. Davies & Co., Ltd.

"Honolulu

"John Walker."

And that written across the face thereof were the following words, to wit:

"Certified. Theo. H. Davies & Co., Ltd.

"W. H. Baird, Treasurer."

8.

"That the said paper was not and is not a certified check within the meaning and intent of the aforesaid advertisement inasmuch as Theo. H. Davies & Co., Limited, the corporation therein named as drawee is not a banker nor a banking house and is not engaged in the banking business. And that said paper does not purport to be drawn upon any fund or deposit in the possession of said corporation or belonging to the said John Walker.

"And complainants are informed and believe and so allege upon information and belief that said paper or pretended check was not in fact drawn upon or against any such fund or deposit.

9.

"That said respondent, C. S. Holloway, as Superintendent of Public Works, has awarded the contract to perform said work to

the said John Walker, and said Holloway and said Walker are about to execute such contract and a bond in conjunction therewith for the completion of the work.

10.

"That said John Walker is about to commence work under said contract; and said Superintendent of Public Works is about to incur obligations thereunder in the name of the Territory of Hawaii, and intends to pay out large sums of money as said work progresses and to approve vouchers therefor, and for materials to be furnished under said contract by said John Walker; and that said J. H. Fisher, as auditor aforesaid will, if not enjoined, issue warrants upon the treasury of the Territory to said John Walker in payment of the obligations so proposed to be incurred by said Superintendent of Public Works as aforesaid.

11.

"That said contract is null and void and contrary to law and the awarding thereof to said John Walker as herein set forth was illegal and unfair and will result in irreparable injury to the complainants herein as well as to all other taxpayers of said Territory; and deprives said complainants of their right of fair, equal and impartial competition under the law in bidding on public contracts."

The answer of the superintendent and auditor admitting substantially the averments in the bill denies "that the bid of said John Walker was not accompanied by a certified check of 3 per cent. of the amount of his proposal as required by the terms of the aforesaid advertisement.

"They deny that the paper filed by said John Walker was not and is not a certified check within the meaning and intent of the aforesaid advertisement, and have no knowledge or information sufficient to form a belief as to the other allegations contained in paragraph 8 of said complaint, and therefore deny the same and leave the complainants to their proofs thereof."

The answer of the defendant Walker is in substance the same as that of the superintendent and auditor.

The bid of the respondent Walker was $168,000. The next lowest bidder was $188,900. The bid of the complainants was $209,000, there being one higher bid for $215,860. The complainants appellants contend as follows:

(1.)  That the draft which accompanied Walker's bid was not a certified check within the meaning of the law.

(2.)  That the requirement of a certified check must be understood in its usual acceptation as known in the law.

(3.)  That the requirement having been imposed upon all bidders both by the terms of the advertisement and also by the specifications, it became a condition precedent, and no bid not accompanied by such a check could be considered.

(4.)  That if the superintendent had authority to prescribe such a condition it was binding on himself as well as on the bidders and could not be waived.

(5.)  That, if the superintendent had no authority to impose such a condition, the imposition of it invalidated the whole advertisement and the bids filed pursuant to it.

(6.)  That even if the superintendent had authority to insert the condition in the advertisement, and also to waive it, he had no authority to waive the provision of the specifications which contained the same clause.

(7.)  That, therefore, the decree should be reversed and the cause remanded with instructions to grant the injunction.

We hold that the superintendent of public works had authority to make the condition that a certified check should be deposited with the bid, that such requirement was a reasonable one and that it was not within the power of the superintendent to waive it. Also that the requirement was obligatory upon all bidders and that a bid unaccompanied by such a check or its equivalent could not be considered. The question remains, did the respondent Walker substantially comply with the requirement. Strictly, the instrument filed by the respondent Walker was an inland bill of exchange accepted by Theo. H. Davies & Co., Ltd. In its general characteristics other than it was not drawn on a banker it was substantially equivalent to an accepted and certified check. In general terms a check is an inland bill of exchange. Edwards on Bills, 396. Daniel on Negotiable Instruments, Sec.

1567, states that it is often said that a check is, in legal effect, a bill of exchange drawn on a bank or banking house with some peculiarities; that in form a check is a bill on a banking house payable on demand, as we conceive, and that it is perfectly correct to say that it is a bill with some peculiarities or a species of bill; that Sir G. Jessel, Master of the Rolls, calls it a bill of exchange payable at a bankers. Daniel says that this is not a definition. He further says, however, that a check comes within the general designation of a bill so far that a statute authorizing the protest of inland bills would include inland checks; and in *Bull v. Bank of Kasson,* 123 U. S. 105, it was held that checks might be properly designated as drafts or bills of exchange for the purpose of giving the court jurisdiction. The court says, "In the record the instruments by which the action is brought are designated as 'drafts or bills of exchange;' in a general sense they may be thus designated, for they are orders of one party upon another for the payment of money which is the essential characteristic of drafts or bills of exchange. They are also negotiable and pass for delivery and are within the description of instruments of that character in the act of March 3, 1875, prescribing the jurisdiction of circuit courts of the United States." The court continues, "that in strictness they are bank checks, and have all the particulars in which such instruments differ or may differ from regular bills of exchange."

The principal points of difference between a check strictly considered and an accepted bill of exchange are generally as follows: (1) A check is always drawn on a bank or banker; (2) No days of grace are allowed; (3) The drawer of a check is not discharged by the laches of the holder unless he has sustained injury (4) A check is not due until payment is demanded; (5) It is by its face the appropriation of so much money of the drawer; (6) It is not necessary that the drawer of a bill should have funds in the hands of the drawee. The character of a check, however, changes on being certified; it then more closely resembles a bill of exchange. The certification in the one case and the acceptance in the other are in effect identical

and constitute a resemblance in substantial particulars. The office of a simple check is merely to require the immediate payment of money. Neither the drawer nor the holder has the right to demand from the bank anything but payment and the bank has no right, as against the drawer, to do anything else but pay it, consequently there is no such thing as acceptance of checks in the ordinary sense of the term. Daniel on Nego. Instr., Sec. 1601. By certifying a check the bank becomes the principal and only debtor. It has been said to be, and obviously is, "equivalent to acceptance" in respect to the obligation it creates upon the bank. Daniels, 1601 A. *Merchants' Bank v. State Bank,* 10 Wall. 648; *Espy v. Bank of Cincinnati,* 18 Wall. 604, on p. 620 says, "but as one of the main elements of utility in a bill of exchange is that it shall circulate freely and it may thus pass through many hands on the faith of the acceptor's signature, it may possibly be that he should be responsible for the promise contained in it as it came from his hands, for it was not drawn on a special fund and the possession of such fund by him does not affect his liability. By such acceptance he becomes primarily liable as if he were the maker of a promissory note. How far these reasons should be applied to a certification that a check was good seems extremely doubtful both on principle and authority. Where the object is to use the endorsement to put the check in circulation or to raise money on it, or to use it as money, and this object is known to the certifying bank, it may be argued with some force that the bank should, as in the case of the acceptance of a bill of exchange, be held responsible for the validity of the check as it came from the hands of the certifying bank. Such a rule would seem to be just when checks are certified, as we know they often are, without reference to the presence of funds by the drawer, and when the well known purpose is to give the drawer a credit by enabling him to use the check as money by putting it in circulation." This case involved the question as to who should stand the loss resulting from a forged signature. The last sentence of the quotation, however, applied strictly to a transaction like the

present and demonstrates that there is no substantial difference between the acceptance deposited by the respondent Walker with his bid and the certified check deposited by the other bidders. This is not a case which calls for a strict and narrow construction of the word "check." The deposit was called for to furnish a temporary security. The amount of the deposit did not comprise the substance of the contract. The case differs from a contract for the sale of land where all terms of payment are strictly construed. This deposit, however, was not a payment. It was within the authority of the superintendent of public works to accept what in his judgment might be an equivalent to a certified check. If the amount called for had been tendered in cash it could not be reasonably contended that the bid must be rejected for non-compliance with the terms of the advertisement. On the other hand, the tender of a certified check of a foreign bank not doing business in this Territory, or of a bank located in a distant state, the standing or responsibility of which the superintendent of public works would have no means of readily ascertaining, might be a compliance with the letter of the advertisement, but would not be of its spirit and meaning. In the *People v. Contracting Board,* 46 Barb. 254, a call for sealed proposals for certain canal work required that all proposals must be accompanied by a certificate of deposit in some banking institution, certifying that the sums specified have been deposited to the credit of the auditor of the canal department. The relator sent in with his bid a certificate that he (the relator) had deposited in a bank the requisite sum to the credit of himself, which he endorsed, "Pay N. S. B., Auditor, etc., or order." His bid was rejected on the ground that a certificate of deposit to his own credit and endorsed as stated did not comply with the terms of the notice. Held, that the relator, being the lowest bidder, and having furnished the requisite security for performance, was clearly entitled to the contract and that the contracting board in rejecting his bid and awarding the contract to another acted without authority.

Moreover, a further reason why a strict definition of the term

"certified check" is not called for in the present case is that the rights of none of the parties primarily concerned, namely, the superintendent of public works, Messrs. Theo. H. Davies & Co., Ltd., and the respondent Walker, turned upon any consideration of the specific qualities of a check strictly considered; for instance, no question here arises as to whether the acceptance can be treated as dishonored paper and thus subject to a set-off as was the case in *Bull v. Bank of Kasson.* Rights of the superintendent of public works as against the acceptor of the bill, are the same and his security is as good whether the instrument in question is an accepted bill or a check; in other words, whether the instrument comes within the definition of an accepted inland bill of exchange payable on demand without grace or whether it is that specific variety of such a bill of exchange as is termed a check. The contention of the complaint turns on a mere verbal definition. The question of substance is did the superintendent of public works obtain a guarantee, of the general nature of that called for, that respondent Walker would stand to his bid, if accepted, and enter into a contract to carry out the work. We consider this to have been the case, and that it was within the power of the superintendent of public works to hold as he did, that this requirement of the advertisement had been substantially complied with. This, as above stated, is very different from waiving the requirement in toto. The bidders were all bidding upon substantially the same footing, the object to be secured was to obtain a substantial pecuniary guarantee of good faith, but this was preliminary only to cover simply the period from making the tender to the time when the contract should be awarded, when further security and an entirely different obligation would be exacted to secure the performance of the contract. The commercial paper of a well known business house, the paper of the class known as banking paper, would seem, if held satisfactory by the superintendent of public works, to be sufficient to guarantee the good faith of the bidder. The actual value of the acceptance in this case is not questioned, nor is there anything in the facts on which to base a charge of actual or pos-

sible fraud or collusion. In giving the superintendent of public works a reasonable latitude of construction of the conditions imposed by him the rights of the public are observed and secured without tangible injury to any of the competing bidders.

As for the plaintiff's claim that the acceptance of drafts is not authorized by the charters of commercial houses, "in general it may be said that one whose rights are not injuriously affected by reason of the fact that a corporation is acting in excess of its powers, or beyond the warrant of law, has no standing in court to complain of the same." 5 Thomp. on Corp., Sec. 6030. A violation of the charter, if any there was in this case, "does not of itself affect any of his (the plaintiff's) rights." *Railroad Co. v. Ellerman,* 105 U. S. 174.

The injunction prayed for is disallowed and the complainants' bill of complaint dismissed.

*Robertson & Wilder* for complainants.

*Lorrin Andrews, Attorney General,* for respondents Holloway and Fisher.

*Holmes & Stanley* for respondent Walker.