OCTOBER, 1913. 689

Foster v. Honolulu Construction & Draying Co., Ltd., 21 Haw. 689.

H. H. FOSTER AND EDWARD ROSS *v.* HONOLULU CONSTRUCTION AND DRAYING COMPANY, LIMITED, A CORPORATION, J. W. CALDWELL, SUPERINTENDENT OF PUBLIC WORKS OF THE TERRITORY OF HAWAII, AND J. H. FISHER, AUDITOR OF THE TERRITORY OF HAWAII.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED OCTOBER 10, 1913.                    DECIDED OCTOBER 21, 1913.

ROBERTSON, C.J., PERRY AND DE BOLT, JJ.

OFFICERS—*call for proposals to perform public work—requirements as to proposals.*

The superintendent of public works having called for sealed tenders or proposals to perform certain work, and having required bidders to submit both a unit and a total bid on each item of work to be done, or material to be furnished, a bidder filed a proposal to perform the work and furnish the material, in which proposal there were, among others, two items, which, in effect read: 455 lineal feet of concrete pipe at ten cents per foot, total $455; 122 lineal feet of masonry wall at seventy-five cents per foot, total, $915; which proposal the superintendent of public works rejected. Held, that the proposal did not comply with the requirements, in that the unit and total bids did not correspond, and it being uncertain which the bidder intended as the correct bid—the unit bid or the total bid,—the proposal was properly rejected.

OPINION OF THE COURT BY DE BOLT, J.
(Perry, J., Dissenting)

The complainants, H. H. Foster and Edward Ross, filed their bill in equity praying for an injunction to restrain the superintendent of public works from signing or approving any vouchers for work done, or material furnished under a certain contract with the respondent, Honolulu Construction and Draying Company, Limited (hereinafter called the "Construction Co."), for constructing certain streets and laying storm drains in the Auwaiolimu tract in Honolulu, and to restrain the auditor

from issuing any warrants in payment of any work done, or material furnished under the contract, and to restrain the Construction Co. from receiving any money under the contract.

The averments of the bill, so far as they are material in the consideration of the questions presented, are, that the complainants are citizens and taxpayers of the Territory; that they instituted this suit as such citizens and taxpayers for themselves and on behalf of all other taxpayers of the Territory; that the superintendent of public works duly advertised for "sealed tenders" for constructing the streets and laying the storm drains mentioned, thereby giving notice that "plans, specifications and blank forms of proposals are on file in" his office, and that he "reserves the right to reject any or all tenders;" that in response to the advertisement thus made five contractors, including the complainants and the Construction Co., filed in the office of the superintendent of public works their respective bids or proposals for performing the work and furnishing the material required by the plans and specifications; that copies of the plans, specifications and blank forms for proposals are annexed to the bill and made a part thereof.

In the blank forms for proposals to perform the work and furnish material there are five columns for bids, one of which forms, as filled out by the complainants respecting the unit prices and total sums bid, and which they filed as their proposal, reads:

"The following are unit prices for the items named in place complete with the gross sum for which the work specified will be performed:

| Item No. | Approximate Quantities | Items | Unit Bid | Total |
|---|---|---|---|---|
| 1 | | Clearing | | $ 300.00 |
| 2 | 24,848 cu. yds. | Excavating | at 60 cents | $14,908.80 |
| 3 | 1,338 cu. yds. | Rubble Masonry Wall | at $5.00 | $ 6,690.00 |
| 4 | 23,435 sq. yds. | Crowning Roadway | at .05 cents | $ 1,171.75 |
| 5 | 1,842 lin. ft. | Guard Wall | at 75 cents | $ 1,381.50 |
| 6 | 455 lin. ft. | (12″ Concrete Pipe Line complete in place) | at 10 cents | $ 455.00 |

Foster v. Honolulu Construction & Draying Co., Ltd., 21 Haw. 689.

| 7 | 7 | Brick Inlets, complete in place | at $35.00 | $ 245.00 |
| 8 | 122 lin. ft. | Rubble Masonry Guard Wall for intersecting streets | at 75 cents | $ 915.00 |
| | | Total for which work will be performed | | $26,067.05" |

The complainants agreed to complete the work in 150 working days after official notice of the award. The proposal of the Construction Co. was in due form and regular in all respects. The total for which it proposed to perform the work being $26,745.20, and to complete the work in 140 working days after official notice of the award. There being ten days difference in the time within which the complainants and the Construction Co. respectively agreed to complete the work, the superintendent of public works under the specifications hereinafter quoted, was authorized to add to the complainants' bid the sum of $100, thus making the total amount of their bid $26,167.05.

The superintendent of public works finding the bid of the complainants "irregular," and acting upon the opinion of the attorney-general of the Territory, rejected it and awarded the contract for the work and material in question to the Construction Co., the next lowest bidder but one whose proposal was also rejected, having failed to name any unit bid whatsoever.

The following provisions of the specifications are deemed pertinent:

"The estimated quantities on these plans and specifications are made for the convenience of the contractor and the Department of Public Works does not assume any responsibility as to the exactness of the same. The contractor will name a lump sum bid for the total work and it will be assumed that his bid is based on a thorough knowledge of the existing conditions and the amount and kind of work to be performed.

"All tenders shall be on blank forms furnished by the Department of Public Works; all terms and conditions of which are made a part hereof.

"The Superintendent of Public Works reserves the right to increase or diminish the work as shown on plans and described

in these specifications; and in such cases shall add to or deduct from the contract price, as the case may be, the value of such additions or deductions, based on the schedule filed with the contractor's tender, or on the unit price in tender.

"The Superintendent of Public Works in determining who is the lowest bidder under these specifications, will consider the difference in time as proposed for the completion of the work by the contractor at the rate of $10.00 per day."

There is no allegation of fraud or abuse of discretion.

The bill prayed for a temporary injunction pending proof and for a perpetual injunction on final hearing. The circuit judge declined to grant the temporary injunction as prayed for, but made an order directing the respondents to appear and show cause, if any they had, why a temporary injunction should not be granted. In compliance with this order the respondents made their so-called returns, which, in effect, were demurrers to the bill, and were so treated by court and counsel. The returns were held to be a complete showing on the part of the respondents to the order to show cause, and a decree was thereupon entered dismissing the bill. From this decree the complainants appeal. The case, therefore, is before the court on the pleadings, no evidence having been adduced.

The superintendent of public works, as will be observed, required the bidders to submit both a unit bid and a total bid on each item of work to be done, or material to be furnished. This was not only a reasonable and proper requirement, but, under certain contingencies which it is not unreasonable to assume might arise, was a requirement of considerable importance. For instance, had the proposal been accepted, assuming for the moment that a contract could be founded upon it, and the superintendent of public works had wished to exercise his right under the specifications to either increase or diminish the work; an important question would then have arisen, namely, Shall the value of such addition to or deduction from the work be based upon the unit bid or upon the total bid? Obviously, assuming the total bids to be correct, if a deduction were to be

OCTOBER, 1913. 693

Foster v. Honolulu Construction & Draying Co., Ltd., 21 Haw. 689.

made in the proposed work it would be to the advantage of the bidder to base the value of such deduction as regards items 6 and 8, upon the unit bids, and, likewise, it would be to the advantage of the Territory to base the value upon the unit bids if an increase in the work should be made. With correct unit bids this question could not arise.

The proposal upon its face presents a question of doubt and uncertainty, both as to the unit bid and the total bid on each of the items mentioned. The question is not merely technical, but it is one of substance. Taking item 6; it is uncertain whether the complainants intended to bid on the 455 lineal feet of pipe drain at the rate of ten cents per foot, making a total of $45.50, or one dollar per foot, making a total of $455. And as to item 8 the same uncertainty exists. Whether the complainants intended to bid on the 122 lineal feet of wall at the rate of seventy-five cents per foot, making a total of $91.50, or $7.50 per foot, making a total of $915, cannot be determined from the proposal before the court. Hence, it is clear that the proposal did not comply with the requirements of the call for tenders. Act 62, Laws of 1909, provides that "All bids which do not comply with the requirements of the call for tenders shall be rejected."

There can be no legitimate question, either as to the authority, or as to the propriety, of the superintendent of public works in requiring each bidder to submit both a unit bid and a total bid on each item of the work to be performed or material to be furnished. It was clearly within his powers to hold as he did that the requirements as to the unit and total bids had not been complied with by the complainants in their proposal as to items 6 and 8, and to reject their bid. *Lord* v. *Supt. Pub. Works,* 16 Haw. 437, 441; *In re Marsh,* 83 N. Y. 431, 435; *Weed* v. *Beach,* 56 How. Pr. 470; *State* v. *N. Y. Co. Comrs.,* 13 Neb. 57.

Counsel for the complainants are not in accord as to the unit bids in question. While one of them contends that there is no error in this regard, the other contends that the unit bids

of ten cents and seventy-five cents as stated in the proposal are palpable errors and that it is within the power of the court to read into the proposal what he terms the correct unit bids, namely, one dollar as to item 6 and $7.50 as to item 8. These conflicting views of counsel, however, tend rather to increase the uncertainty. I doubt the propriety as well as the power of the court to undertake to correct the proposal at this time. Reading into a proposal new or additional terms is quite a different proposition from that of construing a contract. This distinction as between a mere proposal and a contract clearly distinguishes the authorities cited by counsel upon this question from the case at bar. To permit a substantial change in a proposal of the character in question, after the other bids have been opened and made public, would be contrary to public policy, and would tend to open the door to fraudulent and corrupt practices.

The proposal, however viewed, presents a question of doubt and uncertainty as to the bidder's intention. Doubt or uncertainty is incompatible with agreement. To result in a contract, the offer must be certain. No contract can be founded upon uncertainty; and if a contract could not be founded upon the proposal in question because of its uncertainty (9 Cyc. 249), it follows that the proposal was properly rejected. If the proposal, either as to the unit bid, or as to the total bid, is not what the complainants intended, obviously, an acceptance of it in that form would not satisfy the law as to the essential elements of a contract. *Moffett, Hodgkins & Co.* v. *Rochester*, 178 U. S. 373. Such a proposal and acceptance thereof would be lacking in mutuality. It would be a mutual mistake. If, to illustrate a mutual mistake, the owner of a horse offers it to an intending purchaser for $165, and the latter, understanding the price to be $65, takes the horse, the minds of the parties do not meet, there is no sale, and the title does not pass. *Rupley* v. *Daggett*, 74 Ill. 351.

The decree appealed from is affirmed.

*J. Lightfoot* and *E. C. Peters* for complainants.

Foster v. Honolulu Construction & Draying Co., Ltd., 21 Haw. 689.

*A. L. Castle* and *J. W. Cathcart* (*Castle & Withington* on the brief) for the Construction Co.

*Wade Warren Thayer, Attorney General,* for the Superintendent of Public Works and Auditor of the Territory.

### CONCURRING OPINION OF ROBERTSON, C.J.

I concur in the conclusion that the decree should be affirmed. I do not agree with the contention made by counsel for the appellees that the rejection of appellants' bid is to be upheld on the ground that its rejection was a matter within the reasonable discretion of the superintendent of public works. It seems to me that in deciding whether a tender conforms to the terms and conditions of the proposal the officer's discretion is confined to very narrow limits. If the requirements are not unreasonable they must be met, and the statute provides that all bids which do not comply with the requirements of the call for tenders shall be rejected. I doubt whether the awarding officer is given discretion to waive non-compliance with such reasonable requirements as have been imposed.

The requirement that bidders should give a "unit bid" in addition to stating the total amount for which they would do the work or furnish the materials on each item may well be regarded as a reasonable one upon either of the theories discussed. Unfortunately the purpose and effect of the requirement in this case are obscured somewhat by a clause in the specifications reading as follows: "The superintendent of public works reserves the right to increase or diminish the work as shown on plans described in these specifications and in such cases shall add to or deduct from the contract price, as the case may be, the value of such additions or deductions, *based on the schedule filed with the contractor's tender, or on the unit price in tender.*" This has opened the way for the contention that the "unit bid" column has no necessary connection with the "total" column, but has reference entirely to the price at which additional material will be furnished or extra work performed and deductions

from the estimated amounts of work and material would be figured. In my judgment the "unit bid" was intended as nothing else than the rate at which the separate items of work to be performed or materials to be furnished were estimated, the "total" column showing the aggregate of each item. The circumstances go to show that it was so understood by all the bidders except perhaps one who made no use whatever of the "unit bid" column.

Counsel for the appellants, while making the contention above referred to, concede that the appellants did not intend their unit bids to be taken as an independent tender applicable solely to additions to or deductions from the estimated quantities of work or material. In their brief they say, "Here it is apparent that the complainants in making up the bid erroneously computed as to unit of value one-tenth of what the figures actually disclosed. We do not presume to say how the mistake was made; perhaps it resulted from erroneous computation by the decimal system. But it is nevertheless apparent from the complainants' bid, as well as all the other bids in the case, that the unit of value was figured by dividing the sum bid as to each item by the quantity of that item, and that all the bidders interpreted the unit of value to be secured by that method of computation. It is equally obvious that the unit of value set forth in the items in dispute are each one-tenth of what the figures should actually disclose." And again, "It is obvious that the computation of the unit of value depends entirely upon the estimated quantity and the lump sum bid for that quantity. And that computation alone controlled. Any other method of computation would lead to an absurdity. Hence, upon any question of deduction the actual proof of computation would arise from the estimated quantity computed against the lump sum bid and not a palpable erroneous computation would be the measure of deduction."

These statements of counsel sufficiently demonstrate the utter futility and impropriety of trying to fit the other theory as to

the purpose and intent of the "unit bid" column to the case at bar. Even if the above quoted clause of the specifications may be open to the view suggested it should not be so construed in a case where it appears that the parties did not so understand it.

The argument of counsel for the appellants in urging a reversal of the decree concludes with the contention that their unit bids upon items 6 and 8 being palpably erroneous should have been corrected by the superintendent of public works, or should now be read by this court in what counsel claim to be the proper light. I am unable to follow counsel in this. It was not for the awarding officer to say that the amount stated in the "total" column disclosed the rate on which the appellants based their offer and that that given by them in the "unit" column did not, or to decide that the mistake was made in one column rather than the other. Had the superintendent attempted to reconcile the figures he would probably have concluded that as to item 8 the error occurred in the "total" column as, judging from the rates given in the other bids on that item (varying from $1 to $1.50 per foot), it was likely that the rate intended by this tender was seventy-five cents per foot instead of $7.50. But such a change would have reduced the total lump sum bid by a substantial amount, and I think it cannot seriously be claimed that the superintendent had authority to go that far. This is not a case of an obviously mistaken or inaccurate use of a word as disclosed by the context which would permit of rectification by the application of construction. In my opinion it is a case where the disadvantage flowing from a blunder must necessarily rest with the party who committed it. The tender was ambiguous and indefinite and could not have been accepted.

### DISSENTING OPINION OF PERRY, J.

The majority opinions proceed upon the theory that the specifications and the tenders contemplate that the so-called "unit bid" or "unit price" must with reference to every item of work bid on, such as "excavating" and "crowning roadway,"

necessarily be at the same rate as would result from dividing the gross sum bid for each item by the estimated quantity of work or material set forth in the schedule. I do not so understand the specifications and the tenders. As I construe those documents the sole purpose of the "unit bid" is to state an agreed price at which any increase or reduction in the work, which may be ordered by the superintendent under the power expressly reserved to him, is to be paid or allowed for. There is no requirement, express or inferential, that any such increase or reduction is to be compensated at the same rate bid for the work described in the plans and specifications. A bidder after thoroughly familiarizing himself with the physical conditions along and adjacent to the line of the proposed roadways and storm drains, the amount of funds available and of the appropriation and the other circumstances surrounding the making of the improvements might well feel reasonably confident that only insignificant additions at most could be prescribed by the superintendent and that practically no reductions would be ordered and might therefore deem it safe and advisable to name in the "unit bid" column a lower rate than that offered for the main work. Again, the superintendent makes it extremely clear in the specifications that the quantities mentioned in the first column are approximate only and that bidders must visit the localities involved, make their own measurements and assume all the risks as to quantities of material and labor required. A bidder finding on the ground larger cuts or fills than are disclosed by the plans and specifications would naturally name in the last column higher sums than would seem to be justified by the estimated quantities named by the superintendent in the schedule and the rates named in the "unit bid" column for the purpose of increases or reductions.

Under this construction of the specifications and the tenders there is no uncertainty in the complainants' tender and the award of the contract to the Construction Company was unauthorized and should be set aside.